UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VARSITY GOLD, INC., <br><br>Plaintiff, <br><br>v. <br><br>ERIC BIGHAM, individually; and ELMER BIGHAM, individually and on behalf of his marital community, collectively dba Next Level Fundraising, <br><br>Defendants. | CASE NO. C06-509RSM <br><br>ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION |

This matter is before the Court for consideration of a motion by plaintiff Varsity Gold, Inc., ("Varsity Gold") for a preliminary injunction. Oral argument was heard on May 25, 2006, and the matter has been fully considered. For the reasons set forth below, the Court DENIES plaintiff's motion.

FACTUAL BACKGROUND

This is a diversity suit brought by Varsity Gold, Inc., an Arizona corporation, against a former employee, Eric Bigham, and his father Elmer Bigham, based on alleged tortious conduct in this district. Varsity Gold is a national fundraising company that promotes and markets fund raising products to high school athletic teams and other organizations. According to the complaint, Varsity Gold's fundraising products are discount cards and coupon ticket packages, which Varsity Gold develops by signing up

ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTION - 1

merchants for offers such as "2 for 1".  Varsity Gold typically customizes the discount card for each school location.  The books or cards are offered to the school at a discounted price.  The students or staff then sell the books at a higher price to family and friends.  Varsity Gold retains a percentage of the sales receipts, with the balance going to the school.  Participating merchants benefit through increased business and publicity.

Varsity Gold asserts that since 1988 they have worked with over 7,000 school teams and other organizations nationwide.  Typically, they contract with schools to be the exclusive provider of such discount products for one or two years at a time.  With the contracts in hand, Varsity Gold sales representatives then approaches merchants to negotiate the discounts.  Varsity Gold asserts that the relationship it has developed with the merchants is very important, and that the merchants highly value participation in the program.  This fundraising program has been developed and perfected over a period of years.

Varsity Gold attributes much of its success to its independent sales representatives ("sales reps") who live in the area in which they work.   Varsity Gold has developed marketing plans, sales programs, manuals, customer lists, and information about pricing policies and financial matters associated with school organizations around the country—all of which it considers proprietary and confidential information. Varsity Gold contends that it also provides extensive training to its independent sales reps in the use of the proprietary information and materials.  In turn, the sales reps are required to sign agreements restricting the use and disclosure of confidential  information and materials.  The agreements also restrict a former sales rep from soliciting customers or entering into competition with Varsity Gold in the sales rep's area for a period of two years after he or she leaves the company.  The sales rep agreement also provides that "all lawsuits, claims or other legal proceedings arising from or related to this Agreement" shall be governed by Arizona law, and venue shall be in Maricopa County, Arizona.

Defendant Eric Bigham began working for Varsity Gold in November 2003 as a sales rep assistant, or trainee, under the supervision of an area sales rep in Pennsylvania.  In May, 2005, he entered into his own sales rep agreement with Varsity Gold for a sales territory in southern New Jersey.   He

ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTION - 2

worked solely on commission but was allowed a monthly draw. Mr. Bigham asserts that he was given very little training and support, and nothing in the way of medical benefits or reimbursement for his costs (gas and phone bills), and that he signed the 2005 sales rep agreement under heavy pressure. His employment was terminated on December 2, 2005. Varsity Gold contends that upon leaving Mr. Bigham "failed to account" for some 5000 fundraising products for which he was responsible, and also failed to pay his account balance.

Varsity Gold alleges that Mr. Bigham began working for a direct competitor in the Pennsylvania/South New Jersey area in December, 2005. However, by February, 2006, Mr. Bigham had moved to Washington State. Here he started a new business, Next Level Marketing, again in competition with Varsity Gold. Eric Bigham used the Selah, Washington address of his father Elmer Bigham, a retired pastor, as his business mailing address. Mr. Bigham then began approaching high school coaches, some of which are in the Western District of Washington, to solicit new business. According to plaintiff, Mr. Bigham has approached coaches at some 60 schools that have contracts with Varsity Gold. Of these, two broke their contracts with Varsity Gold and signed with Mr. Bigham's company. One of those was subsequently convinced by Varsity Gold to honor the original contract.

The complaint filed by Varsity Gold asserts cause of action for (1) tortious interference with business relations; (2) Consumer Protection Act violations; and (3) breach of contract. Plaintiff has moved for a preliminary injunction on all three claims, seeking to enjoin defendants from (1) interfering with Varsity Gold's contractual relationships with areas schools and merchants; (2) committing Consumer Protection Act violations; and (3) using or disclosing confidential information in breach of the sales rep agreement.

## ANALYSIS

The traditional criteria for granting a preliminary injunction are: (1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiff if injunctive relief is not granted; (3) a balance of hardships favoring the plaintiff: and (4) advancement of the public interest. *Textile Unlimited, Inc., v. A..BMH Co., Inc.*, 240 F. 3d 781, 786 (9th Cir. 2001); citing *Los Angeles Memorial Coliseum*

ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTION - 3

*Commission v. National Football League*, 634 F. 2d 1197, 1200 (9th Cir. 1980). A preliminary injunction is not an adjudication on the merits, but a device for preserving the status quo until trial, and for preventing the irreparable loss of rights before judgment. *Id.*, citing *Sierra On-Line, Inc., v. Phoenix Software, Inc.,* 739 F. 2d 1415, 1422 (9th Cir. 1984).

In this circuit, a party moving for a preliminary injunction may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised, and the balance of hardships tips sharply in the moving party's favor. *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F. 2d 1197, 1201 (9th Cir. 1980). These two formulations are not separate tests, but represent a sliding scale on which the required degree of irreparable harm increases as the probability of success decreases. *United States v. Odessa Union Warehouse Co-op*, 833 F. 2d 172, 174 (9th Cir. 1987).

**1. Tortious Interference with Contract**.

In order to be entitled to a preliminary injunction on this claim, Varsity Gold must first demonstrate that it is likely to succeed on the merits. Under Washington law, the elements of the claim are (1) the existence of a valid contract or valid expectancy; (2) defendants' knowledge of that expectancy; (3) intentional interference inducing or causing a breach of that contractual relationship; (4) defendants' improper purpose or improper means; and (5) resulting damages. *Leingang v. Pierce Co. Medical Bureau*, 131 Wn. 2d 133, 157 (1997).

Elements (1) and (2) are not in dispute. As to element (3), Varsity Gold asserts that Eric Bigham has repeatedly told coaches at schools under contract to Varsity Gold that they need not honor that contract because Varsity Gold would not enforce the contracts against the schools. The parties agreed at oral argument that it would indeed be improper for defendants to urge the coaches at schools under contract with Varsity Gold that those contracts could be broken with impunity. However, plaintiff's assertion that Mr. Bigham has repeatedly done this is based mainly on hearsay. Declaration of Kenneth Holden, ¶ 14; Declaration of Philip Pine, ¶ 5; Declaration of David Wright, ¶ 5. Of the ten coaches who presented personal declarations regarding Mr. Bigham's solicitation efforts, only two stated that they

ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTION - 4

were advised by Mr. Bigham that Varsity Gold would not enforce its contracts. Declaration of Randy Affholter, Dkt. # 8; Declaration of Kevin Young, Dkt. # 15. The remaining eight coaches stated only that Mr. Bigham claimed that his program would make more money for the school than Varsity Gold's program. Dkt. ## 9, 10, 11, 12, 13, 14, 16, 17. There is thus no evidence that this has occurred repeatedly, or that it is an ongoing problem.

As to element (5), damages, it appears that only one of the many schools contacted by defendants actually breached its contract with Varsity Gold. As to that one "induced" breach, Varsity Gold has an adequate remedy at law, so there is no danger of irreparable harm. Monetary damages alone are generally insufficient to establish irreparable harm. *American Passage Media Corporation v. Cass Communications, Inc.*, 750 F. 2d 1470, 1473-74 (9th Cir. 1985).

Varsity Gold has also alleged a public interest component to the proposed harm from Mr. Bigham's competitive activities:

> Part of the irreparable nature of the harm caused by the Bighams is the impact their actions have beyond the schools, including to merchants and the public. For every school under contract with Varsity Gold that the Bighams are allowed to induce to breach their contact, there will be ten to twenty corresponding merchants whose contracts will likewise be breached. With a wrongfully acquired school contract in hand for the competing discount cards, the Bighams will contact many if not all the same local area merchants under contract with Varsity Gold to participate in the fundraising program, thereby inducing them to breach their contracts with Varsity Gold.     This will lead to confusion among merchants who expected to work again with Varsity Gold. The public, on the other hand, may be approached by student athletes to purchase discount cards from different area schools not understanding that the cards are from different fundraising companies.

Motion for Preliminary Injunction, p. 18. This "harm" is purely speculative. It is also possible that Mr. Bigham could, as he proposes, negotiate better deals with the merchants for discount cards, and the public and the schools would be better served. So the only real anticipated harm is economic harm to Varsity Gold, which as shown above is not irreparable harm sufficient to justify a preliminary injunction.

**2. Consumer Protection Act Violation**.

The elements of a CPA claim under Washington law are: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) with a public interest impact; (4) causing an injury to

ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTION - 5

plaintiff's business or property; and (5) the injury must be caused by the unfair or deceptive act or practice. *Hangman Ridge Training Stables v. Safeco Title Insurance Co.,* 105 Wn. 2d 778, 780 (1986).

Varsity Gold has not met the burden of demonstrating that it is likely to succeed on the merits of this claim. First, the unfair or deceptive act must be one which "had the capacity to deceive a substantial portion of the public." *Id.* at 785. The deceptive acts alleged are Mr. Bigham's solicitation efforts, which "disrupt the contractual relationship or business expectancy Varsity Gold has with schools and merchants." Motion for Preliminary Injunction, p.12. That is not an activity which has the capacity to deceive a substantial portion of the public, because it can only affect coaches and not members of the general public. In reply on the motion, Varsity Gold defines more specifically the alleged deception: Mr. Bigham's "misleading" coaches by telling them that their contracts with Varsity Gold can be broken or need not be honored. As explained above, there is little evidence to support this contention. If anything, the fact that eight of the coaches who submitted declarations did not mention such an attempt to mislead supports the conclusion that Mr. Bigham's statements to two other coaches were isolated incidents.

Varsity Gold has thus not demonstrated an entitlement to a preliminary injunction on the CPA claim.

### 3. **Breach of Contract**.

Varsity Gold has also moved for a preliminary injunction on the claim that Mr. Bigham breached the disclosure and confidentiality portions of his sales rep contract. The Court assumes for the purpose of addressing this motion that this claim is properly before the Court, in spite of the unambiguous mandatory venue clause in the contract itself, laying venue for all disputes in Maricopa County, Arizona. Nevertheless, Varsity Gold has failed to make the requisite showing of success on the merits, because nowhere has it identified any specific confidential or proprietary information that it alleges Mr. Bigham has used improperly, or disclosed. Varsity Gold would have this Court assume that Mr. Bigham is improperly using Varsity Gold's confidential marketing materials and techniques he learned there, simply because he is now in direct competition. Mr. Bigham, on the other hand, has stated in his declaration that he received very little in the way of training from Varsity Gold, and actually learned and developed his

own methods on the job while working there.  Declaration of Eric Bigham.

In the absence of the designation of any specific, unique and confidential marketing material or method that Mr. Bigham has used in violation of the sales rep contract provisions, it cannot be said that Varsity Gold has demonstrated a great likelihood of success on the merits of this claim.  Nor has Varsity Gold make the requisite showing of irreparable harm; that is, harm that cannot be remedied by monetary damages.

Accordingly, the motion for a preliminary injunction is DENIED as to all claims.

Dated this 1st day of June, 2006.

/s/ Ricardo S. Martinez
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTION - 7